UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ENCOMPASS INSURANCE COMPANY OF        :
AMERICA, *as subrogor of Stephen Isola*,   :
                                       :
                     Plaintiff,        :
                                       :     **OPINION & ORDER**
        -against-                      :
                                       :     11 Civ. 2606 (KMW)
WILLIAM TODD ENGLISH,                  :
                                       :
                     Defendant.        :
------------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

Plaintiff Encompass Insurance Company of America ("Encompass") brings this subrogation action against Defendant William Todd English ("English") seeking to recover damages English allegedly caused to an apartment insured by Encompass. Encompass filed its Complaint on April 19, 2011, asserting claims for negligence and breach of contract. [Dkt. No. 1]. English filed his Answer on July 11, 2011. [Dkt. No. 11]. The Parties subsequently engaged in extensive discovery, which concluded by September 30, 2012. [Dkt. No. 25].[1]

Before the Court is English's motion for summary judgment. [Dkt. No. 28]. For the following reasons, the motion is GRANTED.

I.      FACTUAL BACKGROUND

As required, the Parties have submitted Rule 56.1 statements. (*See* Def.'s 56.1 Statement [Dkt. No 27]; Pl.'s 56.1 Counterstatement [Dkt. No. 39]; Def.'s Resp. to Pl.'s Counterstatment [Dkt. No. 50]). These statements reveal the following undisputed facts.

---

[1] This case was originally assigned to the Honorable George B. Daniels, was reassigned to the Honorable Alison J. Nathan on February 2, 2012, and finally was reassigned to the undersigned on December 26, 2012. [Dkt. Nos. 12, 45].

1

### A. The Parties

Plaintiff Encompass Insurance Company of America is an Illinois corporation authorized to issue insurance policies in the State of New York. (Compl. 1). Defendant William Todd English is a resident of New York.

On October 9, 2007, English entered into a one-year lease ("the Lease") to rent an apartment located at 195 Hudson Street, New York, New York ("the Apartment") from Mr. Stephen Isola, a non-party to this case. (Def.'s 56.1 ¶ 6; Pl.'s 56.1 ¶ 31).

### B. The Operative Agreements

The Lease required both English and Isola to obtain insurance, and also contained a provision whereby both English and Isola agreed to waive their respective insurer's rights of subrogation. The waiver of subrogation provided:

> Unless prohibited by the applicable policies, to the extent such insurance is collected, [English] and [Isola] release and waive all right of recovery against the other or anyone claiming through or under each by way of subrogation."

(Def.'s 56.1 ¶ 7 (citing Lease § 22 E)).

Isola and English obtained the necessary insurance—Isola through Encompass, and English through The American Insurance Company ("American"). (*Id.* ¶¶ 8, 10). Isola's policy with Encompass permitted Isola to waive Encompass' right of subrogation so long as it was done "in writing[,] before a loss." (Coppola Aff. Ex. E). English's policy with American permitted English to waive American's right of subrogation under similar circumstances. (*Id.* Ex. G.).

### C. The Fire

On September 21, 2008, a fire occurred at the Apartment. (Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 35). At the time of the fire, English was in Boston, Massachusetts. (Def.'s 56.1 ¶ 12). New York City Fire Marshall John Franzone, Jr. investigated the fire and concluded that the fire

2

originated "in the area of electrical wiring in combustible material (plastic wire insulation)" inside one of the Apartment's closets. (*Id.* ¶¶ 23-24). Although Marshall Franzone "could not fully ascertain the cause of the fire," he "stated that it most likely was caused by electrical wiring." (*Id.* ¶ 25). Neither Party had experienced any problems with the closet's light fixture or the Apartment's electrical system prior to the fire. (Pl.'s 56.1 ¶ 60; Def.'s 56.1 ¶ 13).

Both Parties hired experts to investigate the cause of the fire. English's expert, William Nolan, determined that the fire originated in the closet at issue, but could not determine the cause. (Def.'s 56.1 ¶ 27; Pl's 56.1 ¶ 27). In contrast, Encompass' expert, Bruce Bohlander, concluded that the fire began "because combustible bedding material was overstuffed into the [closet]" so as to come into contact with the exposed light bulbs in the light fixture, causing the material to ignite. (Pl.'s 56.1 ¶ 38).

Encompass commenced this subrogation action seeking to recover approximately $400,000 in damages arising out of this fire. (Def.'s 56.1 ¶ 3).

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate only if the record establishes that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating that no dispute of a material fact exists. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). In evaluating whether the moving party has met its burden, a court must "construe the evidence in the light most favorable to the non-moving party and . . . draw all reasonable inferences in the non-moving party's favor." *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 208 (S.D.N.Y. 2010) (Wood, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 178-79 (2d Cir. 2008); *see also* Fed. R. Civ. P. 56(e). Accordingly, where adjudication of a claim requires assessing credibility or deciding between conflicting versions of events, summary judgment is not appropriate. *See Jeffreys,* 426 F.3d at 553-54; *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), but must show that there is "significant, probative evidence" on which a reasonable factfinder could decide in its favor. *Anderson*, 477 U.S. at 247.

### B. Lease Interpretation

"Courts applying New York law must discern the meaning of the terms of a lease by looking to the plain meaning of its terms." *Indian Harbor Ins. Co. v. Dorit Baxter Skin Care, Inc.,* 430 F. Supp. 2d 183, 190 (S.D.N.Y. 2006) (Leisure, J.). Questions of contract interpretation may be resolved at the summary judgment stage where the "words convey a definite and precise meaning absent any ambiguity." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). However, "[w]here the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate." *Id.* (citations omitted); *see also Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975) (same).

4

## III. DISCUSSION

As a threshold matter, the Court finds that subject matter jurisdiction exists; Encompass is an Illinois corporation, English is a resident of New York, and the damages alleged exceed $75,000. *See* U.S. Const. art. III, § 2; 28 U.S.C. § 1332(a)(1), (c)(1); (*see also* Compl. ¶¶ 1-3). Venue is proper because the relevant acts occurred in New York, New York. 28 U.S.C. § 1391(a). Neither party disputes that New York law governs.

In his motion, English asserts three bases for summary judgment. The Court addresses each in turn.

### A. Evidence Regarding the Fire's Cause

English contends that he is entitled to summary judgment because Encompass has not produced sufficient evidence for a jury to conclude that his acts or omissions were a proximate cause of the fire. (*See* English Mem. 4-6 (citing *Mittendorf v. Brooklyn Union Gas Co.*, 195 A.D.2d 449 (N.Y. App. Div. 1993); *N.Y. Cent. Mut. Fire Ins. Co. v. Turnerson's Elec., Inc.*, 280 A.D.2d 652 (N.Y. App. Div. 2001))).

English's argument mischaracterizes the available evidence. Although the cause of the fire remains disputed, Encompass has produced substantial evidence that English caused the fire. For example, Encompass has submitted the affidavit of Bruce Bohlander,[2] an engineer and home inspector who has "performed numerous forensic engineering investigations . . . into the origin and cause of fires." (Bohlander Aff. ¶ 3 [Dkt. No. 42]). Bohlander investigated the Apartment

---

[2] Although English disputes Bohlander's expert credentials and his methods, (*see* Nolan Reply Aff. ¶¶ 3-8; Wharton Reply Aff. ¶¶ 4-20), it would be improper, at this stage, for the Court to make such credibility determinations. *See Scanner Techs. Corp. v. Icos Vision Sys. Corp.*, 253 F. Supp. 2d 624, 634 (S.D.N.Y. 2003) (Chin, J.) ("The credibility of competing expert witnesses is a matter for the jury, and not a matter to be decided on summary judgment."); *see also Gucci Am., Inc. v. Guess?, Inc.*, 843 F. Supp. 2d 412, 418 (S.D.N.Y. 2012) (Scheindlin, J.) ("In cases where credible expert reports conflict the case for summary judgment on the disputed issue is very weak." (citing *New Orleans Emps.' Ret. Sys. v. Omnicom Grp., Inc. (In re Omnicom Grp., Inc. Sec. Litig.)*, 597 F.3d 501, 512 (2d Cir. 2010))).

fire and concluded that the fire was caused "by the careless placement of combustible materials" which ignited when they came into contact with exposed light bulbs in the closet.  (*See id.* ¶¶ 5-6, 14; *see also id.* Ex. B (Bohlander August 10, 2012 Report).[3]  Encompass has also submitted deposition testimony describing the closet, prior to the fire, as "stuffed" and "too crowd[ed]" with blankets and linens.  (*See* Kirker Aff., Ex. A 41-43 (Isola Dep.); Ex. B 17-18 (Hernandez Dep.)).  Viewing this evidence in the light most favorable to Encompass, the Court finds sufficient evidence for a jury to conclude that English was responsible for the fire.

Summary judgment on this ground is therefore denied.

### B. Spoliation

Next, English contends that he is entitled to summary judgment as a sanction for Encompass' spoliation of evidence.  (*See* English Mem. 7).  In particular, English contends that he "never had the opportunity to examine the [closet light] fixture because the area was totally compromised before his expert was able to examine the fire scene."  (*Id.* at 8).

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  A court may impose sanctions for spoliation even without a discovery order.  *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991)).  The Second Circuit has instructed that spoliation sanctions should be crafted to (1) deter, (2) "place the risk of an erroneous judgment on the [spoliator]," and (3) "restore the prejudiced party to the same position he would have been" absent the spoliation." *Id.* (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).  Although outright

---

[3] Although the New York Fire Department officially listed the fire's cause as undetermined, Bohlander explains that the purpose of the Fire Department's investigation "is to determine whether a fire is incendiary or not, and not to determine the exact cause of accidental fires."  (Bohlander Aff. ¶ 12). Accordingly, the Fire Department's conclusion "is not inconsistent" with Bohlander's findings.  (*Id.*).

dismissal of a lawsuit is a permissible sanction for spoliation, such a "drastic remedy" should be imposed "only in extreme circumstances" where "there is a showing of willfulness, bad faith, or fault." *Id.* at 779-80. Courts apply a "case-by-case" approach to determine the appropriate sanction. *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).

The Court finds that the evidence of spoliation in this case is weak and certainly does not warrant the extreme sanction of dismissal. The fire at issue occurred on September 21, 2008, leaving the Apartment uninhabitable and in need of "substantial and immediate repairs." (Coppola Reply Aff. Ex. N (Letter from Isola to English)). Encompass' expert inspected the premises on September 24 and claims to have been able to examine "the entire electrical system in the area of fire origin." (Bohlander Report 2). English's expert inspected the property five days later, on September 29, and concluded that "the entire area of origin had been previously cleaned up, with most of the debris thrown away and discarded." (English Reply 11 (citing Coppola Aff. Ex. K (Nolan Report))). English contends that this proves that Encompass wrongfully destroyed the relevant evidence during those five days. There is evidence, however, that Encompass did not begin cleaning the Apartment until *after* English's inspection. (*See* Coppola Reply Aff. Ex. N (September 30 letter from Isola requesting that English "remove [his] personal belongings . . . and tender possession" so that repairs could begin); *id.* Ex. R Isola Dep. 70-71 (discussing same)). The Court cannot conclude, therefore, that Encompass, and not the Fire Department, the tenants and their movers, or some other non-party, was responsible for the destruction of the evidence.

In light of this conflicting evidence on a material issue of fact, the Court denies English's motion for summary judgment on this basis.

### C. Waiver of Subrogation

Finally, English contends that this subrogation action is barred by the Lease's waiver of subrogation. Subrogation is an "'equitable doctrine [that] allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse.'" *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 84 (2d Cir. 2005) (quoting *Kaf-Kaf, Inc. v. Rodless Decorations, Inc.*, 687 N.E.2d 1330, 1332 (N.Y. 1997)). Contracting parties are free to waive their insurers' rights of subrogation. *Id.* Parties often include such waivers because they prefer to deal directly with their respective insurer to obtain recovery, and would rather release any right of recovery against the other party. *See Kaf-Kaf, Inc.*, 687 N.E.2d at 1333

#### 1. *The Parties' Arguments*

English contends that he is entitled to summary judgment because the Lease bars Encompass' subrogation claims. (*See* English Mem. 2-4 (citing Lease § 22(e)). Encompass does not dispute that the Lease contains a waiver of subrogation, but rather contends that English cannot enforce the waiver because he was in material breach of the Lease at the time of the fire. (*See* Encompass Mem. in Opp. 5-8). Specifically, Encompass contends that English materially breached the Lease by (1) failing to pay rent on time, and (2) refusing to permit Isola to show the Apartment to prospective tenants. (*Id.* at 5, 7 (citing Isola Aff. ¶¶ 1-7)).

In reply, English counters that he did not breach the Lease and regardless of any breach, the waiver remains independently enforceable. (English Reply 2-6). The Court invited Encompass to file a surreply to address this later argument. In its surreply, Encompass reiterates its earlier arguments and adds that the waiver provision is dependent on English's timely payment of rent and thus unenforceable. (Encompass Surreply 1-6).

*2. Analysis*

**a. Whether English Materially Breached the Lease**

The Court finds that English is not entitled to summary judgment regarding the question of whether he materially breached the Lease. "Under New York law, a material breach is a breach that 'go[es] to the root of the agreement between the parties,' and 'is so substantial that it defeats the object of the parties in making the contract.'" *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004) (Leisure, J.) (quoting *Felix Frank Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997)). In making this assessment, courts are guided by the five factors articulated in the Restatement (Second) of Contracts:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform . . . will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 296 (S.D.N.Y. 2005) (Haight, J.) (quoting Restatement (Second) of Contracts § 241). The application of these factors is generally "fact-intensive" and thus "not appropriate for summary disposition." *Id.*; *see also Teachers Ins. & Annuity Ass'n of Am. v. Coaxial Commc'ns of Cent. Ohio, Inc.,* 807 F. Supp. 1155, 1160 (S.D.N.Y. 1992) (Broderick, J.).

Encompass has provided evidence that English materially breached various provisions of the Lease. In particular, Encompass has attached both an affidavit and deposition testimony from Isola discussing the breaches. (*See* Isola Aff. ¶ 5 (stating that English "failed to pay his rent timely on several occasions" and refused to allow Isola to show the Apartment); Isola Dep. 37

(stating that English paid his rent late "quite a number of times" and only after Isola "track[ed] him down")). Encompass has also attached a default letter sent by Isola to English prior to the fire. (*Id.* ¶ 6 (discussing English's failure to permit entry and outstanding late payments)). These allegations, particularly those regarding late payment of rent, may constitute "material" breaches. *See Madison Ave. Leasehold, LLC v. Madison Bentley Assocs. LLC*, 861 N.E.2d 69, 72 (N.Y. 2006) ("An agreement to pay rent on a certain date is generally a material term of a lease."); *Fifty States Mgmt. Corp. v. Pioneer Auto Parks*, 389 N.E.2d 113, 116 (N.Y. 1979) ("A covenant to pay rent at a specified time . . . is an essential part of the bargain . . . .").

Drawing all reasonable inferences in Encompass' favor and given the "fact-intensive analysis" required to determine materiality, *Bear, Stearns Funding*, 361 F. Supp. 2d at 296, the Court concludes that English is not entitled to summary judgment on the issue of breach.

### b.  Whether the Waiver of Subrogation Provision is Enforceable

English further argues that even assuming he materially breached the Lease, the waiver of subrogation remains enforceable and bars this action. The Court agrees.

As an initial matter, the Court may apply the waiver at the summary judgment stage because the words of the Lease "convey a definite and precise meaning absent any ambiguity." *Seiden Assocs.*, 959 F.2d at 428. The waiver provides, in relevant part, that "[English] and [Isola] release and waive all right of recovery against the other or anyone claiming through or under each by way of subrogation." (Lease § 22 E). This language is unambiguous and not "susceptible to differing interpretations;" nor have the Parties identified any relevant extrinsic evidence that might alter this clear meaning. *See Seiden Assocs.*, 959 F.2d at 428. The Court will, therefore, resolve the applicability of the subrogation waiver.

To determine whether the waiver is enforceable in spite of English's purported breaches, the relevant question is "whether the parties' promises are independent of, or dependent on, each other; if the latter, one party's performance of a particular promise is a condition precedent to the other party's performance." *Indian Harbor Ins.*, 430 F. Supp. 2d at 192. Whether covenants in a lease are dependent or independent "is a question to be determined 'by the intention and meaning of the parties, as expressed by them, and by the application of common sense to each case submitted for adjudication.'" *Greasy Spoon Inc. v. Jefferson Towers, Inc.*, 551 N.E.2d 585, 587 (N.Y. 1990); *see also Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 147 (S.D.N.Y. 2004) (Kaplan, J.) (same).

The Court concludes that the waiver of subrogation in this Lease is independent of the allegedly breached provisions. The Court reaches this conclusion for two reasons: First, the Lease does not expressly condition the enforcement of the waiver on the performance of the breached provisions. *See Indian Harbor*, 430 F. Supp. 2d at 193 (citing *56-70 58th St. Holding Corp. v. Fedders-Quigan Corp.*, 159 N.E.2d 150, 154-55 (N.Y. 1959) ("[T]he intention of the parties is not obscure. . . . [T]he lease fail[ed] to expressly condition the continued payment of rent upon the landlord's procurement of a suitable certificate . . . . " (internal quotation marks and citation omitted))). Indeed, the Lease conditions the enforcement of the waiver only on the proviso that both English and Isola's respective insurers permit such a waiver. (Lease § 22 E).

Second, the waiver is independent of the breached provisions because the breached provisions do not affect the allocation of risk between the contracting parties (English and Isola) and their insurers (American and Encompass). A waiver of subrogation is a way for the parties to "allocate the risk of liability between themselves to third parties through insurance.'" *H & M Hennes & Mauritz LP v. Skanska USA Bldg., Inc.*, 617 F. Supp. 2d 152, 159 (E.D.N.Y. 2008)

11

(quoting *Interested Underwriters at Lloyds v. Ducor's Inc.*, 103 A.D.2d 76, 77 (N.Y. App. Div. 1984)).  Accordingly, waivers of subrogation are generally held to be dependent on lease provisions that directly affect the allocation of risk between contracting parties and their insurers.  *See, e.g.*, *Liberty Mutual Ins. Co. v. Perfect Knowledge, Inc.*, 299 A.D.2d 524, 526 (N.Y. App. Div. 2002) (declining to enforce waiver where asserted breach involved failing to procure liability coverage).  Lease provisions that do not directly implicate this allocation of risk, however, are considered independent of waivers of subrogation.  *See, e.g.*, *Indian Harbor*, 430 F. Supp. 2d at 193 (enforcing waiver where asserted breach involved tenant's failure to obtain the owner's permission before altering the premises).

The Court finds that the breached provisions at issue in this case—timely payment of rent and permitting the landlord to show the apartment—do not affect the allocation of risk between English, Isola, and their insurers.  Whereas a tenant's failure to obtain insurance frustrates the liability scheme envisioned by the parties and undermines the reason for including a waiver of subrogation, *see Perfect Knowledge*, 299 A.D.2d at 526; *Reade v. Reva Holding Corp.*, 30 A.D.3d 229, 232-33 (N.Y. App. Div. 2006), a tenant's failure to timely pay rent or to allow the landlord to show the apartment has no bearing on the parties' relationships with their insurers.  As such, the breached provisions in this case are independent of the waiver.  *See Cohen v. Nonoo*, 422 N.Y.S.2d 574, 576 (Sup. Ct. 1979) (holding an option to purchase to be independent and exercisable notwithstanding breach of rent payment obligations under the lease).[4]

---

[4] In its surreply, Encompass relies heavily on *Perfect Knowledge*, 299 A.D.2d 524.  As discussed above, however, that case offers Encompass little support because the breached provisions at issue—failure to obtain insurance—plainly affected the allocation of risk between the contracting parties and their insurers, and thus are far removed from the provisions at issue in this case.  Encompass further observes that the timely payment of rent is a "primary condition precedent of every residential lease." (Encompass Surreply 4).  Although the Court agrees that the timely payment of rent is an important obligation of tenancy, Encompass' argument fails to address why the waiver of subrogation in this Lease is *dependent on* the timely payment of rent.  *See, e.g.*, *Indian Harbor*, 430 F. Supp. 2d at 192; *Greasy*

The Court therefore concludes that the waiver remains enforceable, making summary judgment appropriate. The waiver is broadly worded, applying to any and "all right of recovery" that Encompass may have. (Lease § 22 E). The Lease thus does not preserve any cause of action for subrogation. Accordingly, both Encompass's negligence claim and its breach of contract claim are barred. *See St. Paul Fire*, 409 F.3d at 85, 87 (enforcing waiver to bar breach of contract and negligence claims); *Indian Harbor*, 430 F. Supp. 2d at 194 (same).

## IV. CONCLUSION

For the reasons stated above, English's motion for summary judgment is GRANTED. [Dkt. No. 28]. The Clerk of the Court is directed to close the case. All pending motions are moot.

SO ORDERED.

Dated: New York, New York
March 4, 2013

/s/_____
Kimba M. Wood
United States District Judge

---

*Spoon*, 551 N.E.2d at 587. Without any direct relationship between the waiver and the timely payment of rent, Encompass' suggestion, taken to its logical conclusion, would mean that a tenant's failure to timely pay rent would relieve the landlord of every covenant made in a lease. Encompass has not cited, and the Court has not found, any support for this interpretation.